ESTELLA MARSHALL v. JAMES H. BROWN.

*Medical testimony—Reading scientific books before the jury.*

A medical witness may testify from his knowledge of the accepted facts of medical science; but counsel cannot be allowed to place the state-

ments of a medical book before the jury by reading therefrom to the witness and then asking him whether what had been read stated the facts therein set forth.

Error to Kent. (Montgomery, J.)   Jan. 17.—Feb. 27.

CASE.   Defendant brings error.   Reversed.

*J. W. & O. C. Ransom* and *E. S. Eggleston* for appellant. A physician cannot be examined as to medical facts of which he has no personal knowledge : *Hitchcock v. Burgett* 38 Mich. 506 ; *Emerson v. Lowell* 6 Allen 146 ; 1 Whart. Ev. § 439 ; nor be asked to read to the jury from a medical treatise and to state whether he coincides with the opinion expressed therein : *Commonwealth v. Sturtivant* 117 Mass. 130.

*Thomas J. O'Brien* for appellee. A witness may be asked for his opinion on a subject of which he has no knowledge except from his reading : *Taylor v. Railway* 48 N. H. 304 ; *Collier v. Simpson* 5 C. & P. 73 ; *Dole v. Johnson* 50 N. H. 452 ; scientific books may be read to a jury as evidence of the author's opinions : *Keith v. Lothrop* 10 Cush. 453 ; *Bowman v. Woods* 1 Green (Ia.) 441 ; *Luning v. State* 1 Chand. (Wis.) 178.

COOLEY, J.   This case comes before us for the second time ; the first verdict having been set aside on exceptions and a new trial ordered.   See 47 Mich. 576.   On the second trial the plaintiff again recovered.

The action is for a negligent injury.   The defendant is a druggist of the city of Grand Rapids.   The plaintiff called for Epsom salts at his store and a clerk delivered instead sulphate of zinc, from the taking of which, before she discovered the error, the plaintiff claims to have been seriously and permanently injured.

To show the effects of sulphate of zinc on the system experts were called, but they seem to have had very little knowledge on the subject beyond that derived from books. Several exceptions were taken to their evidence, which we

do not think well founded. They were entitled to speak, as they did, from the accepted facts of medical science.

One error occurred, however, which it is impossible to overlook. It was decided in *People v. Hall* 48 Mich 486, that it was not competent to read professional books to the jury as evidence. The decision had not been made when this case was tried the second time; if it had been the error now complained of would, probably, not have been committed.

On the cross-examination of Dr. Wood, a witness for the defendant, he was asked if he was acquainted with a certain book. He replied that he had heard of it but had not read it. He was then asked whether it was considered good authority, and he said it was. He was then requested to read a certain paragraph during the recess of the court. When the court convened again, he was recalled and counsel reading from the book the paragraph to which his attention had been called, asked him whether there was a case reported of taking sulphate of zinc, followed by vomiting, purging, and death? As this was what the paragraph stated, the evident purpose of the question was to put the passage from the book in this indirect manner before the jury, instead of reading from it directly. The witness demurred to this method of examination, but was required to answer and did so.

The case differs from *Pinney v. Cahill* 48 Mich. 584, where a medical book was produced to contradict a witness who professed to be testifying from it.

The verdict must be set aside with costs, and a new trial ordered.

GRAVES, C. J. and MARSTON, J. concurred.