## WOELFLE v. CONNECTICUT MUT. LIFE INS. CO. OF HARTFORD, CONN.
### No. 11359.

Circuit Court of Appeals, Eighth Circuit.
April 29, 1939.

J. L. London, of St. Louis, Mo. (Leahy, Walther, Hecker & Ely, of St. Louis, Mo., on the brief), for appellant.

James C. Jones, Jr., of St. Louis, Mo. (James C. · Jones, Lon O. Hocker, Web A. Welker, and Jones, Hocker, Gladney & Grand, all of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

From a judgment entered upon the verdict of a jury in favor of the defendant (appellee) in an action at law brought by the appellant upon two life policies issued by the Connecticut Mutual Life Insurance Company, this appeal was taken. The appellant contends that errors of law occurring at the trial with respect to rulings upon the evidence and the charge of the court require a reversal and a new trial.

The policies in suit provided for double indemnity in case the insured, James E. Woelfle, died as the result of an accident. The insured died from a rupture of the aorta on September 9, 1932. The Company paid the face of the policies, but denied liability for double indemnity. The appellant in her petition asserted that the insured's death was caused solely by an accidental fall sustained by the insured while playing golf on September 5, 1932. It was conceded upon the trial that if the sole cause of the death of the insured was an accident, the appellant was entitled to recover, but that if disease caused or contributed to the death, she had no claim under the double indemnity clauses of the policies.

The issues of fact were: 1. Did the insured sustain a fall on September 5, 1932, as alleged in the petition? 2. If so, did the fall, independently of all other causes, result in his death on September 9, 1932?

The evidence as to the fall on September 5, 1932, was largely circumstantial. The evidence as to what caused the rupture of the aorta resulting in the death of the insured was necessarily the evidence of medical experts, some of whom were of the opinion that the rupture was due to trauma, while others were of the opinion that it was not.

While it seems fairly apparent from an examination of the entire record that the verdict and judgment resulted from a failure of the appellant to convince the jury that the insured's death was the sole result of a fall sustained on September 5, 1932, nevertheless the appellant was entitled to have her case fairly tried and fairly submitted to the jury, and if errors of law were committed by the court during the trial which were in violation of her substantial rights, the judgment must be reversed.

We shall first consider the alleged errors with respect to rulings upon evidence, which are argued in the appellant's brief.

■ It is contended that the trial court erred in permitting Dr. McCordock to testify to experiments concerning which he had read, because his evidence in that regard was pure hearsay and incompetent. He was asked this question: "Do you know, Doctor, approximately what pressure a normal aorta will stand? If you have made any experiments yourself, well and good, or if you know what the accepted literature says about it." The Doctor testified that he had never made any experiments, but went on to state that: "Oppenheim studied the pressure required to rupture portions of aortas removed at post mortem, or apparently normal cases, as far as the aorta was concerned, and he discovered that it required three thousand millimeters of mercury to cause a rupture." He then went on to detail the results of experiments of others upon aortas of animals. He finally gave it as his opinion that a fall such as the insured was claimed to have sustained upon the golf course could not produce a rupture of the aorta. We do not regard the testimony of this witness as to experiments not made by him as hearsay or incompetent. It is apparent that the Doctor was testifying as to the accepted learning of his profession and as to the basis upon which his ultimate opinion was given.

Medical experts are entitled to base their opinions upon the teachings of medical science, and are not limited to expressing opinions only as to subjects with which they are familiar through their own observation and experience. See Western

Assurance Co. v. J. H. Mohlman Co., 2 Cir., 83 F. 811, 821, 40 L.R.A. 561; G. & C. Merriam Co. v. Syndicate Pub. Co., 2 Cir., 207 F. 515, 519; Marshall v. Brown, 50 Mich. 148, 15 N.W. 55, 56; Taylor v. Grand Trunk Ry. Co., 48 N.H. 304, 311, 312, 2 Am.Rep. 229; Pierson v. Hoag, N.Y.Sup.Ct., 47 Barb. 243, 246; State v. Baldwin, 36 Kan. 1, 18, 12 P. 318. See note to Western Assurance Co. v. J. H. Mohlman, supra, 40 L.R.A. 561, 566; Wigmore on Evidence, 2nd Ed., §§ 1691, 1692. A rule which precluded an expert from expressing an opinion based upon the teachings of his profession would be unsound and impractical.

█ Moreover, it appears from the record that another expert witness called by the appellee was permitted, without objection, to give substantially the same testimony which Dr. McCordock gave. We quote from the record with reference to the testimony of Dr. Heinbecker: "Witness did not think that a normal aorta could be ruptured under a strain, such as a slight fall, or a fall such as a man would sustain while walking along on a golf course because it has been proven beyond any doubt that it requires up to 3000 millimeters of mercury to rupture a normal aorta and in a human being the blood pressure never rises over 300 millimeters, so it is inconceivable that the blood pressure in itself could rupture a tissue which can withstand such a pressure."

It is, therefore, our opinion that the testimony of Dr. McCordock, complained of, was neither incompetent nor prejudicial.

█ It is contended that the court improperly excluded the testimony of Dr. Siebert, a witness for the appellant. He was asked the following question: "Could there have been a rupture as shown by this slide that started on Monday, September 5, 1932, and have ruptured all the way through on September 9, 1932?" This question was objected to on the ground that it called for a conclusion and invaded the province of the jury and was mere speculation. The court sustained the objection. Counsel for appellant then made the following offer of proof: "I offer to show by this witness that this rupture could have started on Monday, September 5, 1932, and could have been completed on September 9, 1932." The same objection was interposed to the offer and was sustained. We think the court should have overruled the objection to this testimony. The very purpose of calling Dr.

Siebert was to obtain his expert conclusion or opinion as to whether the alleged fall upon the golf links could have caused, and was the probable cause of, the death of the insured. The fact that the witness was asked for an opinion on an issue that the jury would be ultimately called upon to decide did not affect the admissibility of his opinion. See Svenson v. Mutual Life Ins. Co. of New York, 8 Cir., 87 F.2d 441, 445; New York Life Ins. Co. v. Doerksen, 10 Cir., 64 F.2d 240, 241.

It is apparent, however, that the error in excluding the proffered evidence of Dr. Siebert would not justify a reversal of the judgment in this case, because the record shows: that the Doctor, on cross-examination testified that "his theory was that there was a partial rupture of the aorta on the 5th of September, that went down to a certain place before it ruptured through on the fourth day"; and that he "then described in detail how the slides, which were magnified and thrown on the screen, showed that the aorta had been ruptured through nearly all the way, with only a portion holding until it finally ruptured."

█ Dr. Siebert was asked the following question on direct examination: "Doctor, the evidence in this case showed that this man complained about feeling tough on the ninth hole, and this fall happened on the seventh hole: Would that be consistent with this fall and a partial rupture of the aorta on the seventh fairway?" This was objected to as leading, and the objection was sustained. Counsel for appellant then said: "I desire to show by this witness that the complaint made by the deceased on the ninth green would be consistent with the partial rupture of the aorta on the seventh fairway." The court overruled the offer. We are unable to see how the exclusion of this evidence—assuming its competency—could in any way have affected the result of the trial. It is perfectly obvious that if a man sustained a partial rupture of the aorta in a fall on the seventh fairway of a golf course, he might well complain of "feeling tough" on the ninth fairway; and we find in the record no controversy upon that point.

█ During the examination of Dr. Ives, another of the appellant's expert witnesses, he was asked the following question: "Is there the element of fear connected with a fall, Doctor?" He answered: "Yes, sir." This was objected to, and the court sustained the objection. No motion was made

to strike the Doctor's answer, and it remained in the record. Hence, the plaintiff's assertion that it was error to exclude it is without any foundation.

■ During the trial, the court sustained the objection of the appellee to certain questions contained in the deposition of Dr. Rendleman, who had attended the insured during his last illness. The questions and answers which were eliminated had reference to a report which the Doctor had made with respect to the death of the insured, and are as follows:

"Q. In that report you mentioned an accident, did you not, doctor? A. I don't remember.

"Q. To refresh your recollection, don't you remember you set out in your report he had fallen on the golf links, had fallen in a hole? A. Not that I remember.

"Q. Will you say you didn't? A. No, I won't say anything about it. Have you got the report?

"Q. I am just asking you if you remember. I want your recollection about it."

Counsel for appellee then said: "I submit he ought not be grilled, as he himself puts it, about the contents of a written document that is not submitted to him."

The record shows conclusively that Dr. Rendleman had no personal knowledge about what transpired upon the golf links on the 5th day of September, 1932, when it is alleged the insured sustained the fall. Therefore, any statement contained in his report would not have been competent evidence that the insured had sustained a fall, and, if impeachment, it was with respect to an immaterial matter. For those reasons and for the further reason that the Doctor said that he had no recollection about the matter with respect to which he was being interrogated, the court did not err in striking out the questions and answers above quoted.

■ In cross-examining one of the appellee's experts, Dr. Harris, the following questions were asked and the following answers given:

"Q. Don't you know, as a matter of fact, that Celini says that this type of disseminata does not rupture spontaneously? A. No; if he says that, I don't know it.

"Q. Would you accept him as a reputable authority? A. I accept him— "

At that point, the following objection was interposed: "That is objected to. The gentleman is not here and we can not cross-examine him as to what he found, or anything else."

The court sustained this objection. Counsel for the appellant offered to prove by the witness that the author Celini states that media necrosis disseminata is a form of aging process, and that the aorta does not rupture spontaneously. The court rejected this offer. The witness had already testified that if Celini had stated that the type of disseminata under discussion did not rupture spontaneously, he did not know it. It therefore seems very apparent that, even if the evidence were admissible, nothing could have been gained by examining Dr. Harris further upon what Celini stated. The record indicates that Dr. Harris had not referred to Celini as a basis for any opinion expressed by him upon direct examination, and we think it was within the discretion of the trial court—particularly under the circumstances—to exclude any cross-examination with respect to the teachings of Celini.

■ The authorities are not in harmony as to the extent to which a medical expert may be impeached or cross-examined with respect to his knowledge of a particular subject by reference to medical works upon which he has not relied as authority for his testimony. Many courts hold that such cross-examination is improper. See E. I. Du Pont de Nemours & Co. v. White, 3 Cir., 8 F.2d 5, 6; Davis v. United States, 165 U.S. 373, 377, 17 S.Ct. 360, 41 L.Ed. 750; Western Union Telegraph Co. v. Ammann, 3 Cir., 296 F. 453, 454-455; and compare, Victor American Fuel Co. v. Tomljanovich, 1 Cir., 232 F. 622, 668-669, certiorari denied, 242 U.S. 643, 37 S.Ct. 212, 61 L.Ed. 542. Whatever the correct rule may be, it is apparent that the scope of such cross-examination must necessarily be left largely to the good common sense and sound judgment of the trial court, whose rulings should be upheld unless they constitute a clear abuse of a sound judicial discretion.

■ The appellant complains of that portion of the court's instructions which read as follows: "If the jury believe and find from the evidence that, on September 5, 1932, the insured was afflicted with a disease of the aorta, or with other ailments or diseases, then, even though you may believe from the evidence that the insured sustained an accidental fall on September 5, 1932, while playing golf, yet, if you are

unable to determine from the evidence whether the aorta of the insured would have been ruptured as a result of said fall if the same had not been diseased, or if the insured had not been afflicted with other ailments or diseases, then the Court instructs you that the plaintiff can not recover, even though the jury may believe from the evidence that the insured, on the 5th of September, 1932, while playing golf, sustained an accidental fall; yet, if you further believe from the evidence that at the time of the said fall the aorta of the insured was diseased and was weakened or rendered more brittle as a result of such disease, or that at and prior to such fall the assured was afflicted with high blood pressure, or with other ailments or diseases; and if you further find from the evidence that said fall would not have resulted in a rupture of the aorta, if the aorta had been in a normal condition, or if the insured had not had a high blood pressure or other ailments or diseases, but that said rupture was due to the combined effects of the said fall and the diseased condition of the aorta or the high blood pressure, or other ailments or diseases with which the insured was afflicted, then the plaintiff can not recover."

The contention of the appellant is stated in her brief as follows: "Under the charge, as given by the Court, plaintiff was precluded from recovering, even though there was no causal connection between the so-called disease and the death, and even though the conditions described in the charge were caused by the fall. Obviously, the charge does not correctly declare the law."

 Considered as a whole, the charge, we think, is not subject to the interpretation which the appellant seeks to place upon it. The court, before giving the instruction complained of, had advised the jury that the burden of proof was upon the plaintiff to show that the insured had sustained an accidental fall while playing golf, that the fall caused a rupture of the aorta, and that the rupture resulted solely from the fall and independently of any disease or ailment with which the insured was then afflicted. But, even if the appellant's view of the meaning of this portion of the charge be accepted, we could not reverse, since the exception taken to the charge by the appellant was insufficient to direct the court's attention to what it is now claimed was an erroneous instruction. Counsel for appellant said: "I desire to except to that part of your Honor's charge in which you set out that, if the jury believe that the aorta was diseased or rendered more brittle from other diseases with which the assured was afflicted, that such fall would not have ruptured the aorta." That exception did not call to the court's attention the question which the appellant is now seeking to argue, namely, that the charge did not advise the jury that where death is caused solely by an accident, the fact that the insured has a disease will not prevent recovery. See Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447, 450 and cases cited.

We are convinced, from an examination of the entire record, that there were no errors of law which occurred during the trial of this case which prejudicially affected the substantial rights of the appellant.

The judgment appealed from is affirmed.