## John Fox v. The Peninsular White Lead & Color Works.

*Master and servant—Negligence—Evidence—Instructions to jury—Certiorari.*

1. It is the province of the jury to determine which theory of opposing expert witnesses is the true one.

2. Evidence that defendant's superintendent notified other employés than the plaintiff, but not in his presence, of the dangerous character of the common employment, is inadmissible to rebut the testimony of plaintiff that he was not so informed, and of another employé that he was told by the superintendent not to give such information to the employés.

3. Testimony in behalf of the plaintiff in a negligence case that, after he had sustained the injury complained of, all employés were required to and did sign a contract waiving all claim for damages on account of injuries received from the *same source*, and that danger signals were put up in the shop where they were employed, is properly rejected.

4. The contents of medical books are not competent evidence. *Marshall v. Brown*, 50 Mich. 148; *People v. Millard*, 53 Id. 63, 77; *People v. Vanderhoof*, 71 Id. 158, 179.

5. It it not the duty of an employer to inform an employé of the particular ingredients used in the manufacture of Paris green, if he is notified of their poisonous character, and of the precautions to be used against the dangers incident to working at the vats.

6. It is error for the circuit judge to enter the jury-room and give instructions to the jury without the presence of counsel or the court stenographer, which facts are properly brought before this Court by writ of *certiorari* in aid of and in connection with the writ of error.[1]

Error to Wayne. (Hosmer, J.) Argued January 21, 1891. Decided February 27, 1891.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

---

[1] See *People v. LaMunion*, 64 Mich. 709.

*James H. Pound ( C. J. Lowrie,* of counsel), for appellant.

*Cutcheon, Stellwagen & Fleming,* for defendant.

MORSE, J. The defendant is engaged in the manufacture of paints, dry colors, Paris green, and other poisons at Detroit. About June 12, 1888, the plaintiff was employed by the defendant corporation, and worked five days. He was first put to work cutting chromo yellow, a few hours. After that he was directed to take wet Paris green out of filters with a trowel, and put it in shallow tin pans on a board. After the first day he worked at stirring up the ingredients in vats, cleaning out vats, and in carrying dry Paris green to the dry-room. The boiling mass in the vats was heated to a high degree, and his business was to stir it until it was thoroughly dissolved.

He brings this action for damages, claiming that he was a common laborer, ignorant of the constitutents of the vats, and of the dangerous character of his employment, or that the substances handled by him were so poisonous as to endanger his health; that it was the duty of the defendant to notify him of the poisonous character of the substances used in his employment, and that the vapor arising from the boiling vats was poisonous and dangerous when inhaled, and to provide him with appliances, to wit, rubber garments, boots, gloves, respirators, and sponges, to be used and worn by him in his employment, so as to prevent the poisonous materials, and the steam arising therefrom, from coming in contact with, and from being inhaled and absorbed into, his body and system; that defendant did not perform this duty, by reason of which plaintiff was greatly injured and damaged.

The testimony shows that the plaintiff, soon after he

commenced work, began breaking out on the exposed
parts of his body, and at the end of the five days had
to quit work,-and finally went to Harper's Hospital.
There seems to be no doubt that these sores were caused
by mineral poison coming in contact with his skin while
in his employment with defendant.    It was further
claimed that this poisoning, and the inhaling of the
vapor or steam from the boiling vats, caused partial
paralysis of his lower limbs, and permanent injury to
his health.   This was denied by the defendant, and testi-
mony of experts was given tending to show that the
symptoms of paralysis, defective eye-sight, and other per-
manent ailments were those of white lead poisoning, and
not of arsenic, it being shown that he had worked in
white lead works before his employment by defendant.
The jury rendered a verdict for the defendant.   The
plaintiff brings error.

The record shows that plaintiff, by his counsel, con-
tended that the vapors or steam that arose from the tubs
or vats in which the arsenic and sulphate of copper were
dissolved to form Paris green, which plaintiff inhaled,
were poisonous and deleterious to human health, and in
such vapor and steam would be carried small particles of
the arsenic and copper, which, in coming in contact with
his skin, and particularly the soft spongy parts of the
body, would poison and injure him, and produced the
evidence of medical experts to sustain this contention;
while the defendant claimed that such vapors would be
composed entirely of water, and therefore harmless, and
also sustained its theory by the evidence of medical
experts.   The court seems to have accepted the testimony
of the defendant's experts as conclusive, and refused to
permit the plaintiff's counsel to argue to the jury that
plaintiff received any part of his injuries from the inhal-
ing of the vapors, and directed the jury that the plaint-

iff could not recover upon this branch of his claim; basing his opinion upon the testimony of defendant's foreman, who gave evidence that the minerals used did not become fused in vapor until they were heated to 250 deg. fahrenheit, and stated that a heat of 150 deg. was all that was needed to manufacture Paris green. This was clearly error. It was for the jury, and not for the court, to determine which theory of the experts was the true one.

It is suggested by defendant's counsel that, inasmuch as it was conceded that the pustulation or breaking out upon the body was caused by contact with the arsenic, and the court directed the jury that the plaintiff was entitled to recover his damages suffered by such pustulation, unless it was shown that the defendant notified him of the danger of the arsenic touching the body, and its poisonous character, and, under this direction, the jury found for the defendant, therefore it must be considered that the jury found he had such notice; and consequently, if the question of inhalation had been submitted to them, the verdict nevertheless would have been the same. But, we find nothing in the record showing that he was notified of any danger in inhaling these vapors, and, therefore a new trial must be granted. In view of this disposition of the case, we will notice such assignments of error as we deem important and likely to arise again upon another trial.

The plaintiff proved by the testimony of himself and by Charles Brangshed, who was foreman while plaintiff was employed by defendant, that he was not informed of the dangerous proprieties of Paris green. Brangshed went further, and testified that he had been told by the superintendent, one Abel, not to tell the men at work there, because if they knew that the contents of the vats were 800 pounds of arsenic in one vat in a powder, and about

700 pounds of sulphate of copper, and about the same weight of soda, these being the ingredients of the vats, they would not continue to work there.

"I was told not to tell the folks that was around there what the stuff was. I was not told not to tell whether it was Paris green or not, but I was told not to let the folks know what the stuff was,—what we used it for. I was told not to let the employés know what the ingredients were which entered into Paris green. I had the formula. I was told not to let any one know what the stuff was."

The defendant was permitted, in rebuttal of this testimony, to prove by men who worked there at other times than while plaintiff was employed that the superintendent informed them of the dangerous character of the work. The superintendent was not sworn to dispute Brangshed's testimony, nor was his absence accounted for. The admission of this proof was also error. And the testimony of employés to the same effect, while the plaintiff was working there, was not admissible relative to what the superintendent told them, unless it was shown to be in the presence and hearing of plaintiff. The fact that the plaintiff's counsel, in his opening, stated that no caution was given to any of the men in defendant's employ could not render excusable the introduction of this testimony. The fact in issue was whether or not the defendant notified the plaintiff of the danger, and the evidence in regard to notice should have been confined to this issue. It would have been competent to have shown by Abel that he never told Brangshed to keep the men in ignorance of the poisonous nature of the materials used, but the fact that the superintendent notified other men of their danger could not be used to disprove Brangshed's statement of what the superintendent told him, or as tending to show that plaintiff was notified.

It was not competent to show that, since the plaintiff's injury, contracts had been drawn up by the defendant, and the men required to sign them, waiving all damages on account of injuries that might be received from the poisonous qualities used in their work; nor that danger signals had been put up in the shops. This proffered testimony was properly rejected.

The plaintiff's counsel attempted to show by some of their medical experts that certain medical works, naming them, were standard authorities. No previous mention of these works had been made, or reference to them by any of the medical witnesses. The court committed no error in refusing to permit the witnesses to answer the questions. The counsel's object, as they state in their brief, was to show that their witnesses were sustained in some of their testimony by standard medical authorities. We have held that this could not be done. The contents of medical books are not competent testimony. *Marshall v. Brown,* 50 Mich. 148; *People v. Millard,* 53 Id. 63, 77; *People v. Vanderhoof,* 71 Id. 158, 179. It would be difficult, we think, to show that a medical witness was sustained by a medical book, to which he had not referred, without showing what the book contained, or that it held what the witness testified, which would be the same thing.

The court was correct in charging the jury that it was not the duty of the defendant to inform the plaintiff of the particular ingredients or the formula used in the manufacture of Paris green, if he was notified of their poisonous character, and the precautions to be used against the dangers of working at the vats.

It is complained that the circuit judge practically told the jury that, if they found that the plaintiff knew Paris green was a poison, this would defeat his action, although he was not aware of its effect upon the system if handled as he was working with it. The instructions, taken as a

whole, may be open to this complaint. A man might know that Paris green was a poison if taken internally, but not know that it would cause pustulation by handling, or be absorbed into the system, and cause poisonous effects, from contact with the outer surface of the body. It was the duty of the defendant not only to inform the plaintiff that it was a poison, but of the effect it might produce to one working in its manufacture without taking due precaution; and the precaution necessary to be taken should have been pointed out, if known to the defendant, and all proper and reasonable appliances and facilities provided to guard against the dangers to be encountered in the employment. Then the person taking the employment would assume the risks of it.

We find but one other error necessary to be noted. The action of the circuit judge in entering the jury-room, and giving them instructions, without the presence of counsel or the court stenographer, is properly brought before us by the writ of *certiorari* in aid of and in connection with the writ of error, and we think such action was error.

The judgment is reversed, and a new trial granted, with costs of this Court to the plaintiff.

CHAMPLIN, C. J., McGRATH and LONG, JJ., concurred. GRANT, J., did not sit.