JOHN J. WHALEN, JR. *vs.* WILLIAM ROSNOSKY.

Suffolk.   March 25, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.   *Evidence,* Opinion: experts.

At the trial of an action by a boy seventeen years of age against his employer to recover for injuries resulting from a piece of steel flying into his eye when, under directions of the defendant and with no warning from him of danger, he struck a hatchet, furnished him by the defendant to be used as a wedge in opening a box, with a hammer also so furnished, it appeared from the plaintiff's evidence that the plaintiff, a bright boy, had gone to work for the defendant on the day of his injury, that the tools furnished to him were proper, were " good, fair, ordinary trade " hatchet and hammer, and that, when the hatchet was struck on the head by the hammer, particles of steel were likely to fly from the hatchet at every blow.   *Held,* that the act which the defendant directed the plaintiff

to do was one of the common operations of everyday life, free from complexity or complication, and ordinarily a harmless act, and that there was no duty resting upon the defendant to warn the plaintiff.

At the trial of an action by a bright boy seventeen years of age against his employer to recover for personal injuries, it appeared that the injury complained of resulted from a particle of steel flying into the plaintiff's eye when, under the defendant's direction and without any warning from him of danger attending the act, in opening a box he struck a hatchet used as a wedge with a hammer, both tools being furnished by the defendant. The plaintiff desired to ask one experienced in the manufacture and use of steel tools, who had testified that, when the hatchet used by the plaintiff was struck on the head with the hammer used by him, particles of steel were likely to fly off at every blow, " What is that hatchet fitted for," and " What is the proper material of which to make a wedge," and offered to prove by expert testimony that the tools used by the plaintiff were not safe and suitable tools for the purpose for which they were made. *Held*, that the questions should be excluded, the subject not being a proper one for expert testimony.

TORT, by an employee against his employer to recover for personal injuries. Writ in the Superior Court for the county of Suffolk dated March 1, 1904.

There was a trial before *Harris*, J. The facts introduced in evidence are stated in the opinion. The facts relative to the questions to the plaintiff's expert, mentioned in the last paragraph of the opinion, were as follows:

One Pinel, a manufacturer of granite tools, testified that he had had experience with reference to the quality of iron and steel used in tools, and that when the hatchet used by the plaintiff was struck on the head by the hammer used by him particles of steel were liable to fly off from the hatchet at every blow. He was then asked, " What is that hatchet fitted for? " and " What is the proper material of which to make a wedge ? " and the plaintiff offered to show by expert testimony that the hatchet and hammer used by the plaintiff at the time of the accident were not safe and suitable tools to be used for the purpose for which or in the manner in which they were used at the time of the accident.

The presiding judge excluded the questions and ruled that the evidence offered was inadmissible on the ground that it was not a proper subject for expert testimony, and the plaintiff excepted.

At the close of the evidence introduced by the plaintiff, the presiding judge directed the jury to return a verdict for the defendant, and the plaintiff excepted.

*F. L. Norton*, for the plaintiff.

*E. C. Stone*, for the defendant.

RUGG, J. The plaintiff was a bright boy seventeen years old. He began to work for the defendant as an errand boy on the morning of the day of his injury. After going on errands, he was told by the defendant to open some wooden packing cases, and was given as tools with which to do it a hammer and hatchet, which were described by a witness called by the plaintiff as "good, fair, ordinary trade" hatchet and hammer. The defendant told him that he could get the cover off quicker by hitting the hatchet under the cover. After a few strokes, a piece of steel flew off and injured the plaintiff's eye. He was given no warning of danger.

There is nothing to show negligence on the part of the defendant. The tools furnished were proper. The thing he was told to do was one of the common operations of everyday life, free from complexity or complication, and it was done in the usual way. Universal experience has stamped it as ordinarily a harmless act. Under these circumstances there was no duty resting on the employer to warn the employee.

The evidence offered by the plaintiff's expert was properly excluded. The use of a hammer and hatchet in taking off a box cover can be comprehended by persons of average intelligence without the aid of experts. There is no mystery about the construction or use of either. In such a case the simplicity of common sense affords a safer guide than the niceties of technical knowledge.

*Exceptions overruled.*