COMMONWEALTH *vs.* WILLIAM A. DORR.

Essex. November 5, 1913. — January 9, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY & DE COURCY, JJ.

*Homicide. Practice, Criminal,* Venue, Indictment, Variance, Conduct .of trial: order of evidence. *Evidence,* Opinion: experts, Competency, Official records.

At the trial of an indictment for a murder alleged to have been committed in Essex County, the defendant admitted the killing, but contended and testified that the act was committed in Suffolk County more than one hundred rods from the Essex County line. There was evidence that the defendant had planned the crime for a considerable length of time. The body was found in Essex County over three thousand feet from the boundary line, and there was evidence that wounds upon it showed that death must have ensued almost instantly after they

were inflicted. There was further evidence that a cane and a cap, which were found in the immediate vicinity of the body, were used and worn by the deceased shortly before the body was found, and that a button, found in the same vicinity, was worn by the defendant on the afternoon of the murder. *Held,* that the jury were warranted in disbelieving the defendant and finding that the murder was committed in Essex County.

It cannot be said as matter of law that, at the trial of an indictment for a murder committed by shooting, testimony of a physician having especial knowledge of anatomy and considerable experience with bullet wounds, giving his opinion as an expert as to the position in which the body of the deceased was when the wounds were received, would not be helpful in enabling the jury to reach a just conclusion on that question.

At the trial of an indictment there was evidence warranting a conclusion that the crime was committed in order to benefit financially an aunt of the defendant, and as bearing on that issue the Commonwealth offered in evidence a deed of property to the aunt from the deceased with a letter from the deceased to a witness directing that it be held in escrow by the witness until the death of the deceased if he should die before a certain day, which would be over three years after the homicide. There was evidence that the deed had been discussed in the presence of the defendant and he testified that he knew of it and of the purpose for which it was put in escrow and that there was no secret as to the terms under which it was held in escrow. *Held,* that the deed and letter were competent evidence.

Where, at the trial of an indictment for murder, it becomes material for the Commonwealth to show that a certain button, found near the body of the deceased, was a button from the coat of the defendant, it is within the discretion of the presiding judge to permit the button to be shown to a witness before he is questioned in regard to it.

If at the trial of an indictment for murder a diary kept by the defendant is produced by the Commonwealth during the testimony of one of its witnesses and is marked for identification only, it is within the discretion of the presiding judge to deny a demand of the defendant's counsel to be allowed to examine it at once, and to rule that the counsel may examine it "immediately preliminary to" its introduction in evidence, and not before.

The official record of a fact made by a public officer in the performance of his duty may be introduced in evidence as proof of the truth of the fact recorded.

The director and forecaster of the United States Weather Bureau at Boston, testifying at the trial of an indictment for a murder committed at Lynn, stated that in his opinion the weather conditions and the velocity of the wind at Boston at the time of the alleged crime would not vary substantially from those prevailing where the body was found, and then, subject to an exception by the defendant, he was allowed to read from original records of weather conditions in Boston at the time in question, which were kept in his office under his supervision, although not in his handwriting. *Held,* that the exception must be overruled, because the records must be treated as in evidence, and, being records kept by a public official in the performance of his duty, were admissible.

RUGG, C. J. The defendant was indicted for the murder of one George E. Marsh. The defendant admitted the killing, but asserted that it was in self defense. It was undisputed that the

deceased died instantaneously, from bullet wounds received from the defendant.

1. The defendant contends that there was not sufficient evidence on which to find a verdict of guilty of murder in the first degree, under the indictment which charged that the crime was committed at Lynn, within the county of Essex. Under this indictment it was necessary for the Commonwealth to prove that the deceased was killed in Essex County or within one hundred rods of the county line, or that he died in that county. R. L. c. 218, §§ 46 and 49. The facts bearing upon this point were: — that the deceased was last seen alive by any witness except the defendant near Central Square in Lynn, at about four ·o'clock in the afternoon of April 11, and that the defendant in his automobile was then a few hundred feet distant and in plain sight of the deceased; that about thirty-five minutes after four of the same day a cane, which might have been found to have been one used by the deceased that afternoon, was discovered in the road directly opposite the spot where the body of the deceased was found; thirty or forty feet distant was a cap which might have been found to have been worn by the defendant on the same afternoon; that the next morning, April 12, the body of the deceased was found at the foot of an embankment in Lynn, thirty-seven hundred and one feet from · the line separating Essex County from Suffolk County, and at about the same time a button, which might have been found to have been torn from a coat worn by the defendant on the preceding afternoon, was seen lying in the highway near the place where the body was found; and that some time later a pistol, identified as belonging to the defendant and carrying unexploded cartridges of the same size and type as those found in the body of the deceased, was discovered in the Saugus River, the centre of which is the county line between Essex and Suffolk. The defendant testified that at his invitation the deceased entered his automobile in Lynn, but that the homicide occurred in Suffolk County more than one hundred rods from the county line, and that he "had brought the body back in the automobile and carried it about for about two hours when he placed it upon the embankment above where it was found." There were no buildings between the spot where the body was lying on the morning of April 12 and the gate house at Saugus River bridge on the county

line. The mere finding of the body with marks of mortal wounds upon it of such character that death must have ensued almost instantly, at a place where it must have been thrown by the hand of man, within the county of Essex, was sufficient to prove that the killing occurred in that county. *Commonwealth* v. *Costley*, 118 Mass. 1, 26. There was evidence of the other facts which have been narrated and which well might have been thought to lend confirmation to the conclusion that acts of violence occurred near the place where the body was found. The statement of the defendant to the contrary might have been disbelieved by the jury, who saw him on the witness stand and had opportunities for determining as to his truthfulness and reliability. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad*, 197 Mass. 314, 323. Moreover, there was ample evidence from which the inference might have been drawn that the purpose of the defendant to commit the crime had been fixed and predetermined for a considerable period of time. If this was found to be the fact, manifestly his testimony as to the way in which the killing occurred might have been discredited.

2. The medical examiner who qualified as an expert was permitted, against the exception of the defendant, to give his opinion as to the position in which the body of the deceased was at the time the bullet wounds were received, which was based upon a surface flesh wound. The ground of objection was that that subject was one not requiring special knowledge, but one which could be comprehended by persons of average intelligence without the aid of experts, and reliance is placed on *Edwards* v. *Worcester*, 172 Mass. 104, and *Whalen* v. *Rosnosky*, 195 Mass. 545. But it cannot be said as matter of law that a physician, having special knowledge of anatomy and considerable experience with bullet wounds, would not be able to express an opinion upon this point helpful in enabling the jury to reach a just conclusion. *Commonwealth* v. *Spiropoulos*, 208 Mass. 71.

3. One motive for the commission of the crime might have been found to have been a desire on the part of the defendant to cause a financial gain to his aunt, Orpha A. Marsh, to whom he appeared to be deeply attached. As bearing upon this issue, the Commonwealth offered in evidence through a witness Crane, a deed from the deceased to Orpha A. Marsh of property of con-

siderable value, together with a letter directing the witness Crane to deliver the deed at the death of the deceased if that event occurred before July 20, 1915. At the time these documents were introduced, the presiding judge* instructed the jury that they were not to be considered as evidence unless the defendant should be found on the testimony to be directly or indirectly acquainted with the matters contained in them. Later the same witness testified that he and Orpha A. Marsh discussed the escrow deed a good many times in the presence of the defendant, and that once he spoke of it to the defendant. The defendant himself also testified that he knew of the deed in escrow and that its purpose was to carry out the intent of an original trust deed from another kinsman for the benefit of Orpha A. Marsh, which was invalid because of a defect in its terms; that he had talked with his aunt about the deed in escrow, and that there was no secret about the fact or the terms upon which it was held by the witness Crane. Manifestly knowledge of the substance of the two documents introduced in evidence was brought home to the defendant, and that being so, they became competent evidence.

4. Two witnesses were called by the Commonwealth for the purpose of identifying the button found in the road near the place where the body of the deceased was discovered, as being a button from the coat of the defendant. The button was shown to each of the witnesses and then inquiries were made about it. The defendant objected upon the ground that it was a leading question if the button was presented first. It is difficult to see how it can be regarded as a leading question, to present an article to a witness with an inquiry about it. But even if it be treated as a leading question, this is not ground for setting aside the verdict. Within reasonable limits, leading questions may be permitted as matter of discretion by the presiding judge. *Moody* v. *Rowell,* 17 Pick. 490, 498. *York* v. *Pease,* 2 Gray, 282. *Green* v. *Gould,* 3 Allen, 465. *Commonwealth* v. *Meserve,* 154 Mass. 64, 68.

5. During the examination of a witness a diary and letter of the defendant, which were important pieces of evidence in favor of the contentions of the Commonwealth, were marked for iden-

---

* *Quinn,* J.

tification, but were not then offered in evidence. Counsel for the defendant at that time demanded the right to inspect the diary and letter, but the judge ruled that he could examine them "immediately preliminary to the introduction" of them in evidence, and not before. This ruling related merely to the order of introduction of evidence, a matter resting in the discretion of the trial court to the exercise of which no exception lies. *Commonwealth* v. *Piper*, 120 Mass. 185. *Commonwealth* v. *Smith*, 162 Mass. 508. *Commonwealth* v. *Johnson*, 188 Mass. 382, 385.

6. The director and forecaster of the United States Weather Bureau at Boston testified that he had before him the original record of the weather conditions kept at the Boston offices of the United States Weather Bureau under his supervision, although not in his handwriting, and that in his opinion the weather conditions and the velocity of the wind at Boston would not vary substantially from those prevailing at the place where the body was found. Thereupon, against the objection of the defendant, the records as to weather conditions and velocity of wind were read. The official record of a fact made by a public officer in the performance of his duty may be introduced in evidence as proof of the truth of the facts recorded. This rests upon the general principles of the law of evidence, and not upon the statutes. *Gurney* v. *Howe*, 9 Gray, 404. *Allen* v. *Kidd*, 197 Mass. 256, and cases cited at 259. Weather bureau records generally have been admitted under this rule. *Evanston* v. *Gunn*, 99 U. S. 660. *Hufnagle* v. *Delaware & Hudson Co.* 227 Penn. St. 476. *Kolodrianski* v. *American Locomotive Works*, 29 R. I. 127. See cases collected in 17 Cyc. 310. The records were in court before the witness and must be treated as actually in evidence.

*Exceptions overruled.*

*C. N. Barney*, (*W. A. Bishop & C. J. Goldman* with him,) for the defendant.

*H. C. Attwill*, District Attorney, for the Commonwealth.