## JOHN P. O'REILLY v. POWERS MERCANTILE COMPANY AND OTHERS.[1]

### December 12, 1919.

### No. 21,374.

**Master and servant — unsafe place of work — insufficient evidence.**

    In an action against an employer to recover damages for illness claimed to have been caused by inhaling disease germs, while at work in a room where fur garments were stored, as a result of the alleged negligence of the master in failing to notify the plaintiff of the dangerous condition of such room, *held* that the court was justified, under the evidence, in directing a verdict for the defendant.

Action in the district court for Hennepin county to recover $5,000. The facts are stated in the opinion. The separate answers alleged plaintiff assumed the risks of his employment and that the hazards incident thereto were obvious. The case was tried before Fish, J., who at the close

[1]Reported in 175 N. W. 116.

of plaintiff's case granted defendants' motion for a directed verdict. From an order denying his motion for a new trial as to Ernest M. Ganley Construction Company, plaintiff appealed. Affirmed.

*George R. Smith, H. Stanley Hanson* and *Leo J. Gleason,* for appellant.

*K. A. Campbell* and *B. Burness,* for respondents.

QUINN, J.

Action to recover damages for illness contracted through the alleged negligence of defendants. The trial court directed a verdict in favor of the defendants at the close of plaintiff's testimony. From an order denying his motion for a new trial as to defendant Ganley Company, plaintiff appealed.

The defendant Powers Mercantile Company owned a four-story building fronting on Fifth street in the city of Minneapolis, in which it conducted a department store. The Ganley Company is a corporation engaged in the repair of buildings in and about that city.

The Powers Company employed the respondent to make certain changes and repairs in its store, and on April 22, 1918, respondent undertook the relining of a room, located in the center of the fourth floor of the store, with ordinary tar paper. This room was approximately 14 by 16 feet with a seven foot nine inch ceiling, and had existed and been used since 1916 as a place to store furs and fur garments received for that purpose from customers. It was sealed up tight and lined with two thicknesses of paper nailed onto the wall. The only openings into the room were two doors, one of which was kept closed.

The respondent directed the plaintiff and one Davies, carpenters in its employ, to reline this room with paper furnished them. The work consisted in removing certain hangers which were in the way, and the loose fragments of the old paper, and putting on the new. The rolls of new paper were left outside the room near the entrance and cut into strips as needed. Plaintiff worked six hours on April 22, and five hours on the following day, when he was taken sick as hereinafter outlined.

Plaintiff was a man in good health, 58 years of age, and had for nearly 40 years been engaged at carpenter, cabinet and mill work in that vicinity. He testified that, while at work in this room on the afternoon of the

second day, he was taken suddenly ill; that his limbs became weak, perspiration came out all over his body; that he became dizzy and his eyesight became dim; that he left the room and went to the carpenter shop where he remained until quitting time, when he went home; that he took a little supper and went to bed at about nine o'clock, and awoke the next morning with a choking, strangling sensation; that he tried to drink, but could not swallow, and then sent for Dr. O'Brien.

Appellant contends that the walls and air of this room were impregnated with infection and disease germs emanating from the putrefaction of the furs and skins kept therein and from the chemicals with which such furs were treated; that the plaintiff's illness was brought about by inhaling the same while so at work; that the respondent knew, or ought to have known, the condition of such room, and that it was its duty to have informed the appellant thereof and cautioned him as to the danger which might result therefrom, and because of a failure so to do it was guilty of negligence.

The trial court assigned two reasons for granting the motion for a directed verdict: (1) That the evidence failed to show the real cause of plaintiff's illness; (2) that there was no evidence of neglect of either of the defendants.

It appears from the testimony that Davies continued to work in and about the room for about a week when he was taken ill with symptoms similar to those of the plaintiff. Dr. O'Brien was the only physician who gave testimony upon the trial. He testified that he was called to see O'Reilly on April 25; that he found him in a highly nervous condition, his voice was muffled and he had difficulty in breathing; that his trouble developed into facial paralysis; that the patient was under his care for seven weeks, during which time he visited him at his home 10 or 12 times; that thereafter the patient came to his office and was under his observation. The doctor further testified that in his opinion there was a possibility, if any of the hides were not thoroughly cured, that there might be a chance for septic poison, or from the chemicals used in the tanning of the hides or for killing the germs that might destroy the furs, a toxic condition might exist; that in his opinion the patient's condition might have been brought about either from a toxic or septic condition or from other causes.

The witness Flynn testified that he had been in the fur business for about 30 years, three years with the Powers Company; that the room in question was built at his suggestion for the purpose of storing customers' furs; that he personally handled all the furs that went into that room; that they were thoroughly cleaned before being put there, and that nothing other than the paper was used to keep out moths and vermin; that during the busy season he was in and out of the room on an average of five or six times per day, remaining from a half to three-quarters of an hour, and that he had never contracted any illness therefrom, nor had they ever had any complaint from any of their employees working about this room on account of any ill effect therefrom.

The record is barren as to proof that respondent knew or had reason to believe that either the air or the walls of the room contained any disease germs or other dangerous infection. There was no proof that any hides not thoroughly cured were ever put into the room. Nor were chemicals of any kind ever used to protect the furs from moths or other vermin. We think the evidence justified the trial court in directing a verdict.

Affirmed.