Cull, J.
This is an action in which the plaintiff seeks to recover damages in the sum of $25,000 for occupational disease alleged to have been brought on while in the employ of the defendant, which, as its name indicates, is a company engaged in the manufacture of storage batteries.
In the process of manufacturing storage batteries, the defendant uses lead, and employees, such as plaintiff, are required to work with such lead and in and about places and rooms in the manufacturing establishment, where such lead is used. The plaintiff entered the employ of the defendant in the month of January, 1916, and worked continuously for said defendant, as a laborer, until the month of June, 1917.
It is alleged by the plaintiff that he was ignorant of the nature of lead and its liklihood to cause lead poisoning or plumbism. It is claimed by the plaintiff that he was required to work in *524 rooms and places where the atmosphere was continually laden with poisonous lead dust and fumes; that he was required to handle barrels, packages and appliances, which gave off dust and fumes which brought on the disease.
Plaintiff alleges negligence on the part of the defendant in respect of a failure on defendant’s part properly to apprise plaintiff of the dangers of lead poisoning, incident to the work of making storage batteries, and also claims that the defendant violated Sections 6330-1 of the General Code, and also certain ordinances of the city of Cleveland, relating to ventilation and noxious fumes and gases in workshops.
The defendant files a motion to strike the petition from the files. Two prior motions, directed to certain portions of the petition, have been ruled upon and, in effect, the present motion is a demurrer. By consent of parties it is treated as a demurrer.
The question presented on the motion to strike, involving, as it does, the right of plaintiff to proceed as if a cause of action were stated, is of interest and importance. I am surprised to find that the identical question does not seem heretofore to have been definitely ruled upon by this court, though Judge Foran practically decided it in the case of Vayto v. Terminal Ry. Co., reported in 18 N. P. (N.S.), pp. 348, et seq., in which case an attempt was made to state a cause of action for occupational disease, under the compensation act. In a former ruling in the case at bar, Judge Foran referred to the Yayto ease, in a brief memorandum opinion, and sustained a motion such as I am now ruling upon, using the Yayto case as a precedent. In his memorandum opinion, the court said:
‘ ‘ The question involved in. the motion to strike was practically decided by this branch of the court in Vayto v. Terminal Ry. Co., 18 N.P. (N.S.), pp. 348 et seq. Occupational disease, as a basis of action, is purely statutory and, unless provided for by statute in express terms, no action lies.”
Upon the original hearing of the motion now before the court, this ruling was followed, practically without study, but upon the re-hearing, because of later rulings of other courts — in one case, a contrary ruling — the court has gone into the matter at con *525 siderable length. Indeed, so far as opportunity afforded, the question has been gone into almost as if Judge Foran had not ruled as he did, though, as my opinion will prove, that ruling is amply vindicated by authority and what I believe to be good reasoning.
It is claimed by plaintiff that the recently decided ease of Leis v. Cleveland Ry. Co., to be reported in one of the forthcoming volumes of Ohio State reports, in which case this court and the court of appeals of this district are overruled in the matter of the application of certain ordinances, has an important bearing upon the question of giving effect, in actions of this kind, to See. 6330-1, General Code, and certain ordinances set forth in the petition. It is claimed that by applying the rule laid down in the Leis ease, it can and should be held, under the statutes and ordinances referred to, that'plaintiff is properly in court. But an even broader claim is made, and must be examined into, to-wit: that under the common law of Ohio, plaintiff is entitled to bring his action for occupational disease suffered by him. In support of this, plaintiff rests largely upon the authority of Zailkowski v. American Steel & Wire Co., 256 Fed. Rep., 9. These eases, and others cited by plaintiff, will be taken up and discussed as the necessities require.
To begin with, it is perhaps proper to discuss briefly the subject of occupational disease in more than its strictly legal aspects, in order that we may know just how it is fast becoming a recognized subject of legislation, and more frequently than formerly finding its way into court. Down to the present, the subject seems to have occupied more attention from a social, economic and medical standpoint, than from that of the law, but with the development of modern humanitarian views, we are finding constitutional assemblies, legislatures and sometimes courts dealing with the subject.
Judge Donahue, lately of the Ohio Supreme Court, in the ease of Industrial Commission v. Roth et al, 98 O. S., 34, defined an occupational disease as “a disease not only incident to a particular occupation, but developed in the usual and ordinary course or manner, by reason of and because of the occupation in which *526 the person suffering therefrom is or was engaged.” In leading up to a formulation of this definition, which is intended as a legal rather than a medical definition, the learned judge shows by his reasoning. that he was attempting a definition for that case, rather than generally, though the definition seems well designed for general legal use. The victim in that case was a common laborer, but had been ordered to do some painting to which he was not accustomed. The paint, being cold, would not flow, and he was ordered to heat it. This he did, in a small, unventilated room. As a result of inhaling fumes from the hot paint, Roth after two days became sick, dying sixteen days later. It was held to be not a case of occupational disease, but of accident, and his dependents were allowed compensation under the workmen’s compensation act. In other words, the illness of Roth did not respond to the legal test laid down by Judge Donahue, in that it did not develop by reason of and in the ordinary course of the regular occupation of Roth, which was that of common laborer. This case is in line with earlier cases,' holding that claims for occupational disease, as such, do not come within the purview of the workmen’s compensation act of Ohio, as it stands at present.
Dr. Thompson, in his work, ‘ ‘ The Occupational Diseases, their Causation, Symptoms, Treatment and Prevention,” published in 1914, gives the following definition:
“The occupational diseases may be defined as maladies due to specific poisons, mechanical irritants, physical and mental strain, or faulty environment, resulting from specific conditions of labor.”
They are not new diseases from the ultimate pathological standpoint, as Dr. Thompson says. For instance, the arteriosclerosis, or chronic nephritis, produced by lead poisoning, is not different from that due to alcoholism or other toxic cases. Nevertheless, as he states, in the grouping of their symptoms, in their mode of onset and progress as well as in their etiology, the diseases caused by industrial hazards may fairly.be regarded as new to medical science, and hence there is justification for their independent classification and description.
*527 It is perhaps due largely to the fact that until comparatively recently, little was done by medical science to classify and describe occupational diseases as such, that the courts have heard little of them. Progress in the subject, in law, must necessarily await, to some extent at least, progress among the medical men. But there are phases of the subject that have a long history in medicine. For instance, Dr. Thompson, at page 197 of his work, says:
“Lead poisoning, or plumbism, is one of the oldest known occupational diseases, having been described for many centuries. Hippocrates recognized lead colic, and Raphael, Corregió and Michael Angelo afford well known historical examples of plumbism acquired through mixing their own paints.”
Dr. Thompson gives credit to Dr. Tanqueral des Planches (1839) for first accurately describing lead poisoning, though he says it was often referred to in general terms, much earlier. He gives to lead poisoning first place among occupational diseases in point of numbers of victims. Painters form the numerical majority, but those working in storage-battery making and white and red lead production present the most serious lesions. Next, from the numerical point of view, come pottery workers. The earliest work on tradesmen’s diseases was by Bemardini Ramazzi of Padua, in 1713.-
The occupational disease, as an important subject of legislation, was noticed in Europe earlier than in America. Dr. Thompson treats of this subject at some length, beginning at page 2 of his book. The various states of the Union, especially those wherein industry is centered, have taken up the matter, in recent years, and restrictive legislation has been adopted in many of them. Some states have made more progress than others, but on the whole, there are indications that the matter is now in a fair way to be dealt with in a manner its importance deserves.
In Ohio, the first really definite recognition in law of occupational disease was the constitutional amendment providing for workmen’s compensation, adopted Sept. 3, 1912, known as Section 35, Article II. Unfortunately, the recognition accorded *528 by this amendment has never been developed far by legislative enactment providing for its treatment under the workmen’s compensation act, and this branch of the court is not. the first to deplore this fact, as a reference to the Vayto case, supra, will disclose. We have, however, some legislation, such as G. C., 6330-1, et seq., enacted under the general police powers of the General Assembly, as well as ordinances of the sort pleaded in this ease, which it is thought by some lawyers cover the subject. Whatever be the view of judges or lawyers on this contention, however, it will not be gainsaid that any legislation short of specific provision for compensation of victims of occupational disease under the workmen’s compensation law, is inadequate and out of harmony with the modern trend of things.
Does an action lie at common law for an oeeupationa1 disease? A discussion of the subject generally, 'rather than within the limitations of the facts peculiar to this case, is not profitless. It is true, in Ohio, that outside of the ease of Zajkowski v. American Steel & Wire Co., supra, there seems to be no record of a recovery for occupational disease as such. One might be slow to accept word for word the dictum of the Michigan Supreme Court, quoted in Ind. Com. v. Brown, 92 O. S., 316, as laying down the law of Ohio on this subject, but the fact is that it is historically correct, in Ohio, as well as in Michigan. The dictum referred to is as follows:
“An employee had no right of action for injury or death due to occupational disease at common law, 'but, generally speaking, only accidents, or accidental injuries, gave a right of action. We are not able to find a single ease where an employee has recovered compensation for an occupational disease at common law.”
The Brown case was decided in 1915. The Zajkowski case, supra, was decided in 1918. Whether the Supreme Court of Ohio would have considered the Zajkowski case, had it been decided before the Brown case, I am unable to say.
With the exception of the Zajkowski decision, I find no ease cited by plaintiff, in Ohio, and few elsewhere, which may not be held to be an accident ease, rather than an occupational dis *529 ease ease, if I look at them in the light of the ruling in the ease of Ind. Com. v. Roth, supra. The broadest possible interpretation of that rule would seem to be that, where an acute' illness is caused through the negligence of the employer, in the matter of warning, to an employee whose regular work is not that to which the illness is incident, there is possible liability, under the general rules of negligence. The employee may be regularly employed by the employer for other work, and directed, as was Roth, in the ease above cited, to take up, for a time, a task involving a hazard of occupational disease, or, as in the ease of Fox v. Peninsular Works, 84 Mich., 676, he may have been employed for but a short time, and given no instructions —even misinformation- — about the hazards of his work. In the latter case, it is also to be observed that the court, at page 682 of its opinion, indicates that it was treating the hazards of poisoning from contact with Paris green as not obvious, hence not chargeable to the knowledge of the victim. Again, the employee may be a minor, as in the case of McCray v. Varnish Co., 7 Pa. Sup. Ct., 610, working in various capacities, and assigned temporarily to the hazardous occupation. Youth, inexperience, latent dangers, deception, and other facts, have been and are seized upon by courts to take out of the operation of the general rule, particular cases, but the general rule is not changed thereby, indeed, it would seem that the exceptions prove the rule. And where courts of soundly established authority have ruled that there is an action at common law, it would seem best, in Ohio, at least, in view of the decision in the Brown case, supra, to treat them as departures from the recognized rule. In this manner, I feel obliged to dispose of such- respectable authorities as Zajkowski v. American Steel & Wire, Co., supra. Nor does the unreported memorandum opinion of Judge Westenhaver, upon demurrer, in eases 9405, 9428 and 9429, United States District Court, to which this court has had access, indicate a different view on the part of that court.
A ruling similar to that of the Ohio Supreme Court, in cases above cited, as indicating the common law rule, is to be found in Wilcox v. International Harvester Co., 14 Negligence Com *530 pensation Cases Annotated, p. 728, where it is stated that, under the law of Illinois, there is no right of action for occupational diseases, unless the workmen’s compensation act of that state applies.
The theory of the common law, if there is one, in reference to occupational diseases, is that human foresight can hardly guard against them. Progress in prophylactic treatment is being made, 'but no such progress has yet been made, that it may be accepted- as a matter of law that any safeguards are reasonably certain. In that state of affairs, it is the province of the Legislature to act, and, after investigation, to lay down rules for courts to follow. The determination of standards is not a burden that should be placed upon the courts.
There 'being no common law action for occupational disease victims, does Section 6330-1, G. C., furnish authority for a right of action?
Counsel for plaintiff state that the effect of holding it does not, is to hold that section unconstitutional. Of course, it is not necessary to hold the section unconstitutional, to say that it does not, as it stands, furnish a right of action to one suffering from an occupational disease. It might be inoperative in the matter in which it is invoked, and be operative otherwise. •
Reasoning from what I have said as to there being no common law right of action for occupational disease, it follows that if the Legislature intended to change the law, it should have done so in express language. Since there was no common law right of action for occupational disease, the mere enactment of a general police regulation, such as Section 6330-1, did not serve to bring into existence a new right of action, such as the one involved in this case. That section is a step toward the objective every one desires, but' it does not go far enough to accomplish what plaintiff contends. Certainly, if it was intended so to do, it would have been easy for the Legislature so to declare. Nor does the invocation of the rule laid down in Variety Iron & Steel Works Co. v. Poak, 89 O. S., 297, assist. Negligence actions, as such, are one thing, and actions for occupational disease are quite another. In the one ease, the right of action *531 is easily recognizable and of long standing. In the other, there is no recognition of it as such, and can be none without legislative enactment. Even if the Poak case were applicable, this court would be obliged to follow the reasoning of the Supreme Court,, in Woodenware Co. v. Schoreling, 96 O. S., 305, in the matter of definiteness.
What has 'been said heretofore disposes, in the opinion of the court, of the arguments of plaintiff, based.upon the ordinance. There being no recognized right of action for occupational disease, as distinguished from so-called accident, through negligence, the ordinances are inoperative, generally speaking, to give rise to such action, even if violated. In a negligence case, pure and simple, violation of one of them would be negligence, per se, but in an action of this nature, they are without effect.
In the view taken of the case at bar by this court, the ruling in the case of Leis v. Cleveland Ry. Co. does not apply. The answer to the argument of plaintiff, based upon the first proposition of the syllabus, to-wit, that "there is no property or vested right in any of the rules of the common law, as guides of conduct, and they may be added to or repealed by legislative authority,” is found in the fact that the Leis case was a negligence case, and not an occupational disease case. As to the third syllabus, to the effect that every intendment is to be made in favor of the lawfulness of local regulations enacted by a municipality to promote the public health and safety, there is nothing to indicate that it was the intention of the court to read into such regulations, unless clearly expressed therein, the establishment of a new grotmd for civil action where there was none before. • '
It may be hard, at times, to ascertain whether a given case is one of occupational disease, or otherwise, and where there is obscurity, some of the decisions would seem to indicate a tendency toward treating the case as one to which the general rules of negligence cases apply, but if there is no express legislative action, giving a right to sue and the occupational disease answers affirmatively to the test laid down by Judge Donahue, *532 quoted above, tbeu it would seem no right of action is recognized. This is not at variance with the general rule as to a master’s duty toward his employee, as given in Shearman & Redfield, 6th Ed., Sec. 203:
“It is also the personal duty of the master, so far as he can, by the use of ordinary care, to avoid exposing his servants to extraordinary risks which they could not reasonably anticipate; although he is not bound to guard against an accident which Is not at all likely to happen. The master must, therefore, give warning to his servants of all perils to which they will be exposed, of which he is or ought to be aware, other than such as they should, in the exercise of ordinary care, have foreseen as necessarily incidental to the business, in the natural and ordinary course of affairs, though more than this is not required of him. ”
The usual and ordinary peril of occupational disease, the overweight of opinion indicates, is such a peril as the employee “should have foreseen as necessarily incidental to the business in the natural and ordinary course of affairs”; hence it is a risk ordinarily to be assumed by him.
The motion to strike is granted.