KOETSIER v. CARGILL CO.

1. Master and Servant—Negligence—Burden of Proof.
   In an action by a servant for damages based upon the negligence of the master, the burden of proof rests upon the servant to establish such negligence.

2. Same — Occupational Disease—Negligence of Master Must be Predicated on Some Duty and Failure to Discharge it.
   Before a master at common law can be called upon to account to a servant for damages caused by an occupational disease, on the ground that the master was guilty of negligence, it must be established that he had a duty to perform and that he failed to discharge it.

3. Same — Master Not Insurer—Test is What a Reasonably Careful Man Would Have Done.
   At common law a master is not an insurer, and is liable to a servant only in case he has been guilty of negligence by doing that which a reasonably careful man should not have done, or in failing to do that which a reasonably careful man should have done.

---

[1]Master and Servant, 39 C. J. § 1209; [2]Id., 39 C. J. §§ 381, 1209; 20 A. L. R. 61; 29 A. L. R. 691; 44 A. L. R. 371; [3]Id., 39 C. J. § 381.

4. SAME—PRINTER NOT LIABLE FOR SERVANT'S CONTRACTING LEAD POISONING WHERE HE HAD NO REASON TO ANTICIPATE SUCH RESULT.

> A printer whose pots for melting lead in connection with his monotype machines were operated in accordance with the common practice in like concerns, and who did not know, and had no reason to know or anticipate, that anyone would contract lead poisoning therefrom, is not liable to a servant for damages claimed to have resulted from his contracting lead poisoning while in charge of said machines.

5. APPEAL AND ERROR — EMPSON ACT—JUDGMENT NON OBSTANTE VEREDICTO ORDERED ENTERED ON REVERSAL.

> Where, in the trial court, verdict was returned for plaintiff, and the provisions of the Empson act were followed, on reversal in the Supreme Court on the ground that plaintiff had failed to make a case, the case is remanded with instructions to enter judgment for defendant notwithstanding the verdict.

Error to superior court of Grand Rapids; Verdier (Leonard D.), J.    Submitted October 14, 1927. (Docket No. 121.)    Decided January 3, 1928.    Rehearing denied April 2, 1928.

Case by Willard Koetsier against the Cargill Company for personal injuries.    Judgment for plaintiff. Defendant brings error.    Reversed, and judgment ordered entered for defendant.

*Travis, Merrick, Warner & Johnson,* for appellant.

*Fred P. Geib* and *William J. Landman,* for appellee.

FELLOWS, J.    Defendant is engaged in the printing, engraving and binding business in the city of Grand Rapids.    In a separate room it has two monotype casters and two monotype keyboards.    These monotype casters cast the type from molten metal, 75 per cent. of which is lead, heated to between 700 and 725 degrees.    Some dross accumulates on the top which

---

[4]Master and Servant, 39 C. J. § 415; [5]Appeal and Error, 4 C. J. §§ 3226 (Anno), 3227.

is skimmed off by the operator.    The used type, dross, and accumulations of metal with the sweepings are remelted in the furnace room and cast into pigs which go to the operating room.    Plaintiff before he attained his majority entered the employ of defendant as a helper in the composing room.    Later he desired to learn to operate the monotype casters and was given instructions.    He operated the monotype caster, and did the work of remelting the metal for nearly a year and a half, when he was taken seriously ill and was obliged to give up his work.    That he is seriously afflicted with nephritis, commonly called Bright's disease, is established conclusively, and is not controverted. Plaintiff's medical testimony tends to establish that its cause is lead poisoning.    This is denied by defendant's medical witnesses.    It is the plaintiff's theory that inasmuch as an occupational disease does not come within the purview of the workmen's compensation act (Adams v. Acme White Lead & Color Works, 182 Mich. 157 [L. R. A. 1916A, 283, Ann. Cas. 1916D, 689]), he may maintain an action at common law for negligence of the master which results in the contracting of such occupational disease, and that he has established such negligence in the instant case.    Defendant here reviews a judgment entered upon a verdict in a substantial amount, which, however, is not claimed to be excessive if plaintiff should recover, and insists (1) that a common-law action for an occupational disease may not be maintained; (2) that no negligence of defendant is shown; and (3) that plaintiff is guilty of contributory negligence.

We are so thoroughly convinced that no negligence of the defendant is shown that we shall rest decision on that ground alone.    The machines used by defendant are of standard construction in common use in printing establishments the country over; this is in

no way denied. The remelting is done in accordance with the common practice in like concerns. While plaintiff's counsel strenuously controvert the proposition, a careful reading of this voluminous record is convincing that defendant's monotype plant is operated as are other monotype plants in the country, and particularly in Grand Rapids, and that this fact is established by the undisputed evidence. Plaintiff's theory is that small particles of lead arise from the heated metal and that a hood with ventilating pipe should be placed over the melting pot to carry them off, and it appeared that another plant in Grand Rapids had a hood over the melting pot, but the manager of that plant was called as a witness and testified that such hood was installed to carry off the fumes of the gas from the burner under the pot and from oil or grease which might get into the pot, and not to carry off particles of lead; that it had not been used or needed for the purpose designed; that the workmen would not make use of it; and that it had been discarded and had not been put to any use for two years. The testimony is without dispute that the gas used in that city is of superior quality and that little or no odor arises from its use. Plaintiff further claims that lead particles otherwise get in the air and may be inhaled with other dust, and that the room did not have sufficient ventilation to carry off the lead-ladened atmosphere. But the undisputed testimony established that there were several windows in the room so arranged that they could be opened at all times for much or little fresh air, and plaintiff's own testimony shows that he had charge of the room. He could ventilate it or not as and when he saw fit. The means of ventilation had been provided by the master. Testimony on behalf of defendant, and it is the only testimony in the case on the subject, establishes that no case of the contracting of lead poisoning by a mono-

type operator was ever known. One witness testifies that he knew of a printer contracting lead poisoning but this was in the olden days when the type was in cases and type setting was done by hand, and this particular printer had a habit of frequently putting his fingers to his nose. There is also some hearsay testimony that witnesses had heard that printers had lead poisoning. But the case is barren of any testimony showing or tending to show that any monotype operator had been so afflicted. Of course, the burden was not on the defendant to establish its freedom from negligence. It rested on plaintiff to establish such negligence.

We are not here dealing with the failure to discharge a statutory duty. Before the master at common law can be called upon to account to the servant in this class of cases, it must be established that he has a duty to perform and that he has failed to discharge that duty. He is not an insurer, and the right to recover must be predicated on his negligence. To say that he is negligent is to say that he has done that which a reasonably careful man should not have done, or that he has failed to do that which a reasonably careful man should have done. In Pollock on Torts (Webb's Pollock on Torts, 45), it is said:

"Now, a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behaviour we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things. This being the standard, it follows that if in a particular case (not being within certain special and more stringent rules) the harm complained of is not such as a reasonable man in the defendant's place should

have foreseen as likely to happen, there is no wrong and no liability."

And in 4 Thompson on Negligence (2d Ed.), § 3774, it is said:

"In applying this doctrine of reasonable care, it is well held that a master is not liable for injuries to his servant resulting from an accident of such a character that reasonable men, proceeding with reasonable caution, would not ordinarily have foreseen and anticipated it,—such as an injury happening under very exceptional circumstances, although the proper precautionary measure, if taken, would have prevented it."

In *Kitteringham* v. *Railway Co.*, 62 Iowa, 285 (17 N. W. 585), the plaintiff sought to recover for damages claimed to have been sustained by poisoned grease on old brasses he was instructed to clean. Defendant had verdict, and among the errors assigned were several on the charge of the court. In discussing one of these assignments, it was said:

"Appellant complains of an instruction given at the request of defendant, as follows:

" 'The jury are instructed that the uncontrovertible testimony in the case discloses that defendant and its employees had no knowledge of the existence of any poisonous substance on the said brasses in question, at the time of said injury; and if, from the experience of defendant and its employees, as disclosed by the evidence, they had no cause or reason to believe that there was any poisonous substance on said brasses, there can be no recovery in this action.'

"It is said that this instruction assumes that the railroad company must possess actual knowledge when the law only requires means of knowledge, and also assumes that the experience of a railroad company will excuse any negligence that it may be guilty of. The instruction is not vulnerable to the criticism made. As already stated, the evidence strongly preponderates against the view that any poisonous matter accumulates upon the brasses before their removal from the axles. If nothing had ever occurred in the experience of

defendant to suggest the existence of such poisonous accumulation, it did not possess such knowledge as would render it negligent in not discovering the existence of poisonous matter on the brasses in question."

In *Gould* v. *Slater Woolen Co.*, 147 Mass. 315 (17 N. E. 531), it was held (quoting the syllabus):

"A woolen manufacturer who uses in dyeing his cloths the most common mordant, which so far as known has never caused injury to any one merely handling cloths dyed therewith, and which he did not know or suppose, and had no reason to know or suppose, to be injurious, is not liable to a purchaser poisoned by handling the cloth."

In *O'Reilly* v. *Powers Mercantile Co.*, 144 Minn. 261 (175 N. W. 116), the plaintiff sought to recover damages for illness claimed to have been occasioned by inhaling disease germs while working in a place where furs were stored. It was said by the court:

"The record is barren as to proof that respondent knew or had reason to believe that either the air or the walls of the room contained any disease germs or other dangerous infection. There was no proof that any hides not thoroughly cured were ever put into the room. Nor were chemicals of any kind ever used to protect the furs from moths or other vermin. We think the evidence justified the trial court in directing a verdict."

A few excerpts from our own cases will demonstrate that this court is in accord with the rule announced:

"Until a master knows and appreciates, or in the exercise of ordinary care should know and appreciate, a danger to his employee, there certainly is no obligation upon him to warn that employee of such danger." *Stone* v. *Bennett*, 194 Mich. 441.

"As defendant was bound to exercise the care and only the care that an ordinarily prudent person situated like itself would exercise, it was bound to know what and only what such ordinarily prudent person should know." *Siegel* v. *United Electric Heating Co.*, 143 Mich. 484.

"The defendant in this case, when it took the plaintiff into its employment, did not warrant the safety of its track, nor the sufficiency of its machinery and appliances, nor the competency of its other servants. It did not insure the plaintiff against the insufficiency of the one, or the incompetency of the other, and it owes no duty to the plaintiff beyond that of reasonable or ordinary care." *Hewitt* v. *Railroad Co.*, 67 Mich. 61.

In *Shadford* v. *Railway Co.*, 111 Mich. 390, this court quoted with approval the following language from *Titus* v. *Railroad Co.*, 136 Pa. St. 618 (20 Am. St. Rep. 944):

"Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same; and, however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way, for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall in effect dictate the customs or control the business of the community."

See, also, *Lockwood* v. *Tennant,* 137 Mich. 305; *Michigan Cent. R. Co.* v. *Smithson,* 45 Mich. 212; *Fort Wayne, etc., R. Co.* v. *Gildersleeve,* 33 Mich. 133; *Mackin* v. *Refrigerator Co.,* 100 Mich. 276; *Canfield* v. *Iowa Dairy Separator Co.,* 172 Iowa, 164 (154 N. W. 434) ; *Hysell* v. *Swift & Co.,* 78 Mo. App. 39; *Whalen* v. *Rosnosky,* 195 Mass. 545 (81 N. E. 282, 122 Am. St. Rep. 271) ; *M. T. Stevens & Sons Co.* v. *Daigneault,*

4 Fed. (2d) 53; *Potter* v. *Richardson & Robbins Co.*, 29 Del. 314 (99 Atl. 540).

The case most relied upon by plaintiff's counsel (*Fox* v. *White Lead & Color Works*, 84 Mich. 676) is clearly distinguishable from the instant case. In that case the plaintiff's testimony not only tended to show that defendant, with knowledge of the poisonous character of the fumes which arose from the vat in which paris green was being manufactured and the poisonous substance going into it, failed to warn plaintiff of the danger, but it also tended to show that his foreman had been instructed not to give such warning. In the instant case and upon this record no monotype operator had ever contracted lead poisoning until the plaintiff did. It was an exceptional case. Under the circumstances, a reasonably careful employer proceeding with reasonable caution would not ordinarily have foreseen and anticipated it. Defendant was bound by those things it knew, or in the exercise of reasonable care it should have foreseen and anticipated, but its duty did not extend beyond that. It was not bound to construct and operate its plant so as to insure against dangers of which it had no knowledge and which a reasonably careful man exercising reasonable care would not foresee and anticipate, nor would he be bound to warn employees of such dangers. We conclude that no negligence of defendant is established on this record.

The judgment will be reversed, and, the provisions of the Empson act having been followed, the case will be remanded with instructions to enter judgment for defendant notwithstanding the verdict.

FLANNIGAN, C. J., and WIEST, CLARK, McDONALD, BIRD, and SHARPE, JJ., concurred.

The late Justice SNOW took no part in this decision.